# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **LATRICIA A. MILLER,** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 2:12cv00034 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Latricia A. Miller, ("Miller"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966).  "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'"  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Miller protectively filed her applications for SSI and DIB on December 9, 2008, and May 28, 2009, alleging disability as of September 27, 2008, due to fibromyalgia, arthritis, hypertension, diabetes, high cholesterol, bursitis in the right hip, back pain, sleep apnea and memory loss.  (Record, ("R."), at 18, 36, 45-46, 129, 133, 387-89, 403-06.) The claims were denied initially and upon reconsideration.  (R. at 62-64, 69, 72-74, 407-09.)  Miller then requested a hearing before an administrative law judge, ("ALJ"). (R. at 75.) A hearing was held on February 10, 2011, at which Miller was represented by counsel.  (R. at 444-81.)

By decision dated March 14, 2011, the ALJ denied Miller's claims.  (R. at 18-32.)  The ALJ found that Miller meets the disability insured status requirements of the Act for DIB purposes through March 31, 2014. (R. at 20.) The ALJ found that Miller had not engaged in substantial gainful activity since September 27, 2008. (R. at 20.) The ALJ found that the medical evidence established that Miller had severe impairments, namely fibromyalgia, osteoarthritis, degenerative disc disease of the lumbar spine, depressive disorder, anxiety disorder, diabetes mellitus and obesity, but the ALJ found that Miller did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20-21.) The ALJ found that Miller had the residual functional capacity to perform noncomplex

sedentary work[1] that did not require her to stand or walk for more than 15 minutes at a time, that allowed her to shift position in place while seated or briefly rise from a seated position, that required only frequent, but not constant or continuous, use of her upper extremities for reaching and handling, that required rare use of foot controls, climbing of stairs or ramps and kneeling, that did not require her to climb ladders or scaffolds, to crouch or to crawl and that required no more than occasional stooping. (R. at 22-23.) The ALJ found that Miller was unable to perform any of her past relevant work. (R. at 30.) Based on Miller's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Miller could perform, including jobs as a charge-account clerk, a telephone information clerk and a food and beverage order clerk.  (R. at 30-31.) Thus, the ALJ concluded that Miller was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits.  (R. at 32.)  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2013).

After the ALJ issued his decision, Miller pursued her administrative appeals, (R. at 14G), but the Appeals Council denied her request for review.[2] (R. at 7-14.) Miller then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981,

_____

[1] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2013).

[2] The Appeals Council initially denied Miller's request for review on October 28, 2011. (R. at 11-14.) However, the Appeals Council set aside that denial in order to consider new evidence. (R. at 7.) On October 9, 2012, the Appeals Council again denied Miller's request for review. (R. at 7-10.)

416.1481 (2013). This case is before this court on Miller's motion for summary judgment filed March 12, 2013, and the Commissioner's motion for summary judgment filed April 15, 2013.

## II. Facts

Miller was born in 1965, (R. at 110, 387, 449), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Miller completed high school and two years of college. (R. at 139, 449.) Miller has past work experience as a telephone representative, a billing clerk and a file clerk. (R. at 449, 476.) Miller stated that she suffered from depression and often had crying spells. (R. at 467.) She stated that she had not sought counseling for her depression. (R. at 467.) She stated that she was taking antidepressant medication that helped with her symptoms. (R. at 467.)

Vocational expert, Asheley Wells, testified at Miller's hearing. (R. at 475-80.) Wells stated that Miller's past work as a telephone representative and a billing clerk were semi-skilled, sedentary work, and her work as a file clerk was classified as semi-skilled, light work.[3] (R. at 476.) The ALJ asked Wells to consider a hypothetical individual of Miller's age, education and work history, who could perform sedentary work that did not require her to stand and walk for more than 15 minutes at any one time, that allowed her to shift in place while seated or briefly rising from a seated position, that required no more than frequent use of her upper extremities for reaching or handling, that allowed her to only rarely use foot

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2013).

controls, to climb stairs or ramps and to kneel, that did not require her to climb ladders or scaffolds, to crouch, to crawl and only occasionally stoop and that required her to maintain attention and concentration only long enough to perform noncomplex tasks. (R. at 477-78.) Wells testified that a significant number of jobs existed that such an individual could perform, including jobs as a charge-account clerk, a telephone information clerk and a food and beverage clerk. (R. at 478.) Wells was asked to assume the same individual, but who would be reduced to no more than occasional reaching and handling bilaterally. (R. at 478-79.) Wells stated that such an individual would not be able to perform the jobs previously identified. (R. at 479.) She stated that such an individual could perform the job of a surveillance monitor, as it requires only occasional reaching. (R. at 479.) Wells also stated that absences of two or more days a month would not be consistent with competitive employment. (R. at 479.)

In rendering his decision, the ALJ reviewed records from Joseph Leizer, Ph.D., a state agency psychologist; Dr. Natasha Shultz, M.D., a state agency physician; Julie Jennings, Ph.D., a state agency psychologist; Dr. Richard Surrusco, M.D., a state agency physician; Dr. Robert McGuffin, M.D., a state agency physician; Park Avenue Physical Therapy and Sports Clinic; Mountain View Regional Medical Center; Arthritis Associates of Kingsport; C. Michelle Flanagan, PA-C, a certified physician's assistant; Dr. R. Douglas Strickland, M.D., a gastroenterologist; and Teresa E. Jarrell, M.A., a licensed psychologist. Miller's attorney submitted additional medical records from Wellmont Health Systems; Cardiovascular Associates; Dr. A. R. Joshi, M.D.; and Robert S. Spangler, Ed.D., to the Appeals Council.[4]

---

[4] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 7-14), this court also must take these new findings into

The record shows that Miller saw Dr. A.R. Joshi, M.D., a cardiologist, from September 2007 through April 2011 for various ailments such as hyperlipidemia, hypertension, diabetes mellitus, fibromyalgia, sleep apnea and knee and back pain. (R. at 276-305, 315-36.) On January 24, 2008, Miller complained of pain and swelling in her feet, legs and hands. (R. at 281.) She had tenderness in the soft tissues around the joints, legs and hands. (R. at 281.) On April 3, 2008, Miller reported that Flexeril had improved her symptoms, but she still had daily pain. (R. at 273.) On October 22, 2008, Dr. Joshi reported that Miller's hypertension was well-controlled, but her diabetes was not. (R. at 279.) On November 13, 2008, Miller complained of leg swelling. (R. at 276.) Dr. Joshi noted mild edema. (R. at 276.)

On March 31, 2009, Miller complained of right knee pain. (R. at 302.) Dr. Joshi diagnosed right knee osteoarthritis. (R. at 302.) X-rays of the right knee revealed mild cartilage thinning at the right tibiofemoral joint. (R. at 312, 336.) On July 1, 2009, Miller complained of hip and back pain. (R. at 319.) Lumbosacral spine and right hip tenderness was present. (R. at 319.) Straight leg raising was restricted on the right side and painful, but not on the left. (R. at 319.) X-rays of Miller's cervical spine revealed moderate C5-6 and C6-7 spondylosis. (R. at 333-34.) X-rays of Miller's lumbar spine showed mild spondylosis. (R. at 334.) X-rays of Miller's pelvis and right hip revealed transitional lumbosacral vertebral body with sclerosis on the right sacral articulation. (R. at 334-35.) On July 15, 2009, Miller complained of pain in the right lower extremity. (R. at 317.) An MRI of Miller's lumbar spine showed L3-L4 disc protrusion on the right, but no evidence

account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

of nerve root compression or significant stenosis. (R. at 329.) Dr. Joshi prescribed conservative treatment. (R. at 315.)

On March 1, 2010, Dr. Joshi suspected that Miller had peripheral artery disease. (R. at 433.) An arterial duplex scan of both lower extremities showed minimal plaque in the peripheral arterial system of both lower extremities with normal flow. (R. at 418-19.) In March and December 2010, Dr. Joshi reported that Miller's hypertension and diabetes were well-controlled. (R. at 431-32.) On March 17, 2011, Miller complained of stiffness in her left elbow and numbness in the right side of her face with slurred speech at times. (R. at 430.) With the exception of some questionable decreased superficial sensation in the right lower side of Miller's face, the neurological examination was normal. (R. at 430.) On April 4, 2011, a bilateral carotid duplex scan showed very nominal plaque with normal bilateral carotid flow. (R. at 414.) A CT scan of Miller's head was normal. (R. at 416-17.) On April 18, 2011, neurological examination was unremarkable except for some decreased superficial sensation on the right side of Miller's face. (R. at 429.) An MRI of Miller's brain was normal, and an electroencephalogram, ("EEG"), was normal. (R. at 410-12.) On June 2, 2011, Miller reported that she was "doing well." (R. at 428.) Her hypertension was well-controlled. (R. at 428.) Dr. Joshi noted that Miller's right facial numbness and slurred speech was a possible meningioma versus osteoma of the right parietal area. (R. at 428-29.) He indicated that he did not believe that it was anything serious. (R. at 428.)

Miller received follow-up care for her fibromyalgia with Dr. Jeffry D. Bieber, M.D., a rheumatologist, and C. Michelle Flanagan, PA-C, a certified physician's assistant. On April 3, 2008, Miller reported to Flanagan that her medication was helping, but that she still experienced pain on a daily basis. (R. at

273.) Flanagan noted that Miller was in no acute distress, and she had full range of motion in her upper extremities. (R. at 273.) On October 28, 2008, Dr. Bieber reported that Miller was in no acute distress. (R. at 270.) She had tenderness in multiple joints in the upper extremities, but had full range of motion. (R. at 270.) Her ankles and toes were tender bilaterally. (R. at 270.) Dr. Bieber noted that Miller should remain out of work for six weeks due to fibromyalgia. (R. at 270.) On November 12, 2008, it was noted that Miller's glucose was doing better, but Miller continued to complain of blurred vision. (R. at 272.) Miller stated that she was not ready to return to work due to her pain. (R. at 272.) Flanagan noted that Miller was in no acute distress and that she had full range of motion in her upper extremities. (R. at 272.) Flanagan noted that Miller should remain off of work through November 28, 2008. (R. at 272.)

On May 12, 2009, Miller complained of headaches and pain from "head to toe," anxiety and depression. (R. at 308.) X-rays of Miller's lumbar spine showed mild spondylosis. (R. at 382.) X-rays of Miller's right foot showed a moderate sized anterior calcaneal spur, and x-rays of her right knee showed mild osteoarthritis. (R. at 308, 312, 382.) On July 7, 2009, Miller complained of muscle spasms in her spine and numbness in her right leg. (R. at 307.) Flanagan noted that Miller was in no acute distress. (R. at 307.) On September 17, 2009, Miller complained of pain and fatigue. (R. at 339-40.) She reported that her medications helped with her symptoms. (R. at 339.) Dr. Bieber reported that Miller was tender over the shoulder, knees, elbows and back. (R. at 339.) He diagnosed fibromyalgia, osteoarthritis, ulcerative skin lesion and hepatomegaly. (R. at 339.) On March 18, 2010, Miller complained of insomnia and right knee problems. (R. at 374.) Flanagan noted that Miller was in no acute distress. (R. at 374.) Miller had decreased strength in her right upper extremity, a slight decrease in strength in her

quadriceps and gluteal muscles, and her right knee was slightly tender with some crepitation and pain with range of motion testing. (R. at 374.) On June 9, 2010, Miller reported that the medication was helping her to sleep better. (R. at 375.) She had no synovitis of the upper extremities, and her upper extremity joints were nontender. (R. at 375.) She had fibromyalgia tender points, but her knees were nontender. (R. at 375.)

On October 13, 2008, Miller was admitted to Mountain View Regional Medical Center due to uncontrolled diabetes. (R. at 223-68.) Miller denied anxiety or depression symptoms. (R. at 223.) She had no limitation of motion. (R. at 224.) Upon discharge, her diabetes had improved, and Miller stated that she was feeling better. (R. at 226.)

On April 22, 2009, Joseph Leizer, Ph.D., a state agency psychologist, indicated that Miller suffered from an affective disorder. (R. at 39-41.) Leizer reported that Miller had no restriction on her activities of daily living, but that she was mildly limited in her ability to maintain social functioning and in her ability to maintain concentration, persistence or pace. (R. at 41.) Leizer found that Miller had not experienced any episodes of decompensation of extended duration. (R. at 41.)

On April 23, 2009, Dr. Natasha Shultz, M.D., a state agency physician, indicated that Miller had the residual functional capacity to perform light work. (R. at 42-43.) Dr. Shultz noted that Miller's ability to push and/or pull was limited in her lower extremities. (R. at 42.)

On April 23, 2009, Dr. Richard Surrusco, M.D., a state agency physician, indicated that Miller could occasionally climb ramps and stairs, balance, kneel and crouch, but never climb ladders, ropes and scaffolds or crawl. (R. at 57-59.) No manipulative, visual or communicative limitations were noted. (R. at 57-58.) Dr. Surrusco noted that Miller should avoid concentrated exposure to hazards, such as heights and machinery. (R. at 58.) He found that Miller could perform her past relevant work as a billing clerk, as actually performed. (R. at 59.)

On September 24, 2009, Dr. R. Douglas Strickland, M.D., a gastroenterologist, examined Miller for abnormal liver function. (R. at 344-49.) Miller denied depression, difficulty sleeping, panic attacks, nervousness, anxiety, paranoia, hallucinations or suicidal ideation. (R. at 345.) Dr. Strickland reported that Miller's judgment, insight and memory were within normal limits. (R. at 346.) He found no evidence of depression, anxiety or agitation. (R. at 346.) He diagnosed abnormal liver enzymes, diabetes mellitus, hyperlipidemia and fibromyalgia. (R. at 346.)

On December 10, 2009, Julie Jennings, Ph.D., a state agency psychologist, indicated that Miller suffered from a nonsevere affective disorder. (R. at 52.) Jennings reported that Miller had no restriction on activities of daily living, but that she was mildly limited in her ability to maintain social functioning and in her ability to maintain concentration, persistence or pace. (R. at 52.) Jennings found that Miller had not experienced any episodes of decompensation of extended duration. (R. at 52.)

On December 10, 2009, Dr. Robert McGuffin, M.D., a state agency physician, indicated that Miller had the residual functional capacity to perform

light work. (R. at 53-55.) Dr. McGuffin indicated that Miller's ability to push and/or pull was limited in her right lower extremity. (R. at 54.) He found that Miller could occasionally climb ramps and stairs, stoop and crouch. (R. at 54.) He found that Miller should never climb ladders, ropes and scaffolds or crawl. (R. at 54.) Dr. McGuffin found no manipulative, visual or communicative limitations. (R. at 54.) He found that Miller should avoid concentrated exposure to hazards, such as heights and machinery. (R. at 55.)

On June 16, 2010, Teresa E. Jarrell, M.A., a licensed psychologist, evaluated Miller at the request of Miller's attorney. (R. at 351-63.) Miller reported that she was not under the care of a mental health provider. (R. at 352.) She denied any history of outpatient or inpatient mental health treatment. (R. at 352.) Miller reported that she was taking antidepressant medication prescribed by her physicians who treated her for arthritis and fibromyalgia. (R. at 352.) Miller had a mildly anxious and mildly depressed mood. (R. at 354.) Immediate and recent memory were normal, and remote memory was mildly deficient. (R. at 354.) Miller's concentration was mildly deficient, but her insight and judgment were within normal limits. (R. at 354.) Jarrell diagnosed major depressive disorder, single episode, severe without psychotic features, generalized anxiety disorder and pain disorder associated with psychological factors and a generalized medical condition. (R. at 360-61.) Jarrell assessed Miller's then-current Global Assessment of Functioning score, ("GAF"),[5] at 55.[6] (R. at 361.)

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

Jarrell completed a mental assessment indicating that Miller had a limited, but satisfactory, ability to remember work-like procedures, to understand and remember very short and simple instructions, to make simple work-related decisions, to ask simple questions or request assistance and to interact appropriately with the general public. (R. at 366-68.) Jarrell reported that Miller had a seriously limited, but not precluded, ability to carry out very short and simple instructions, to maintain attention for two-hour segments, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being unduly distracted, to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, to be aware of normal hazards and take appropriate precautions, to set realistic goals or make plans independently of others, to maintain socially appropriate behavior, to travel in unfamiliar places and to use public transportation. (R. at 366-67.) Jarrell further reported that Miller was unable to meet competitive standards in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances, to complete a normal workday and workweek without interruption from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, to respond appropriately to changes in a routine work setting, to deal with normal work stress, to understand, remember and carry out detailed instructions, and to deal with the stress of semi-skilled and skilled work. (R. at 367.)

On August 9, 2011, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Miller at the request of her attorney. (R. at 434-43.) The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Miller obtained a full-scale IQ score of 87. (R. at 438-39.) Spangler diagnosed recurrent,

severe major depressive disorder, with mild psychomotor retardation and severe generalized anxiety disorder. (R. at 440.) Spangler assessed Miller's then-current GAF score at 50.[7] (R. at 440.)

Spangler completed a mental assessment indicating that Miller had a limited, but satisfactory, ability to follow simple work rules, to use judgment, to function independently (on good days) and to maintain attention/concentration. (R. at 441-43.) He found that Miller had a seriously limited ability to relate to co-workers, to deal with the public, to interact with supervisors, to function independently (on bad days), to understand, remember and carry out simple job instructions, to maintain personal appearance, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 441-42.) Spangler reported that Miller had no useful ability to deal with work stress, to understand, remember and carry out complex or detailed instructions and to demonstrate reliability. (R. at 441-42.) Spangler also noted that Miller would be absent from work more than two days a month. (R. at 443.)

### III.  Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2013).  *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant

---

[7] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning…." *See* DSM-IV at 32.

work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2013).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated March 14, 2011, the ALJ denied Miller's claims. (R. at 18-32.) The ALJ found that the medical evidence established that Miller had severe impairments, namely fibromyalgia, osteoarthritis, degenerative disc disease of the lumbar spine, depressive disorder, anxiety disorder, diabetes mellitus and obesity, but the ALJ found that Miller did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20-21.) The ALJ found that Miller had the residual functional capacity to perform noncomplex sedentary work that did not require her to stand or walk for more than 15 minutes at a time, that allowed her to shift position in place while seated or briefly rise from a seated position, that required only frequent, but not constant or continuous, use of her

upper extremities for reaching and handling, that required rare use of foot controls, climbing of stairs or ramps and kneeling, that did not require her to climb ladders or scaffolds, to crouch or to crawl and that required no more than occasional stooping. (R. at 22-23.) Thus, the ALJ concluded that Miller was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 32.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

In her brief, Miller argues that the ALJ erred by failing to properly consider the opinions of psychologist Jerrell and physician's assistant Flanagan. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 10-13.) Miller also argues that the Commissioner erred by failing to adequately consider Spangler's report of August 9, 2011. (Plaintiff's Brief at 14-17.) She also argues that there was a reasonable possibility that the additional evidence submitted to the Appeals Council from Spangler could have changed the ALJ's decision. (Plaintiff's Brief at 16-17.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975.) Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Miller argues that the ALJ did not give proper weight to the opinions of psychologist Jarrell and physician's assistant Flanagan. (Plaintiff's Brief at 10-14.) Based on my review of the record, I find this argument unpersuasive. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2013). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

The ALJ noted that he had considered Jarrell's opinion, but found that it was not supported by Jarrell's own findings or by the record as a whole. (R. at 30.) The ALJ noted that Jarrell's examination revealed generally mild abnormalities. (R. at 30.) Jarrell found that Miller's immediate and recent memory were within normal

limits, remote memory was mildly deficient, concentration was mildly deficient, insight and judgment were within normal limits, and store of general factorial knowledge was only mildly deficient. (R. at 30, 354.) Miller reported that she was prescribed an antidepressant to treat her arthritis and fibromyalgia. (R. at 352.) Jarrell assessed Miller's then-current GAF score at 55, indicating moderate limitations. (R. at 361.) In October 2008, Miller denied symptoms of anxiety or depression. (R. at 223.) In September 2009, Dr. Strickland reported that Miller's judgment, insight and memory were within normal limits. (R. at 346.) He found no evidence of depression, anxiety or agitation. (R. at 346.) Both state agency psychologists found that Miller suffered from an affective disorder that caused only mild limitations in social functioning and in her ability to maintain concentration, persistence or pace. (R. at 39-41, 52.) In addition, Miller reported that she was involved in church and youth activities, that she spent time with others and had no problems getting along with others. (R. at 145-46, 173, 179-80, 188-89, 195, 353.) Furthermore, Miller testified that her medication helped with her symptoms of depression. (R. at 467.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4ᵗʰ Cir. 1986).

A review of the ALJ's decision indicates that the ALJ did not ignore the opinion from physician's assistant Flanagan. (R. at 24-26.) On October 28, 2008, Flanagan noted that Miller should "continue out of work for 6 weeks." (R. at 310.) To the extent that the notation is construed as a medical opinion, it is inconsistent with the record as a whole. Miller's treatment notes do not continually reference her inability to work after November of 2008. In fact, the treatment notes show that Miller was in no acute distress and had full range of motion. (R. at 307-08, 341-42, 374.) Miller reported to Dr. Bieber that her medications seemed to be helping with

her pain. (R. at 339.) In addition, none of Miller's treating physicians opined that she was disabled or had functional limitations that would preclude all work. Based on this, I find that the ALJ properly weighed the medical evidence and that substantial evidence exists to support the ALJ's finding with regard to Miller's residual functional capacity.

Miller also argues that the Commissioner erred by failing to adequately consider Spangler's report of August 9, 2011. (Plaintiff's Brief at 14-17.) Miller argues that there is a reasonable possibility that the additional evidence submitted to the Appeals Council from Spangler could have changed the ALJ's decision because it supports Jarrell's opinion. (Plaintiff's Brief at 16-17.) I note that the Appeals Council did consider this evidence in declining to review the ALJ's decision. (R. at 7-10.) That being the case, this court also must consider this evidence in determining whether substantial evidence supports the ALJ's decision. *See Wilkins*, 953 F.2d at 96.

In his decision, the ALJ gave Jarrell's report "little weight," finding that it was not supported by the record as a whole. (R. at 30.) The ALJ also noted that Miller did not seek psychological counseling or treatment for her mental impairments during the relevant time period. (R. at 30.) The evidence from Spangler does not indicate that Miller sought mental health treatment. (R. at 434-43.) As noted above, Miller testified that her symptoms of depression were controlled with medication. (R. at 467.) Therefore, I find that the additional evidence submitted to the Appeals Council does not provide a basis for rejecting the ALJ's decision. Therefore, I find that substantial evidence supports the ALJ's finding that Miller is not disabled and not entitled to DIB and SSI benefits.

## PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Substantial evidence exists in the record to support the ALJ's weighing of the medical evidence;

2.  Substantial evidence exists in the record to support the ALJ's finding with regard to Miller's residual functional capacity; and

3.  Substantial evidence exists in the record to support the ALJ's finding that Miller was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Miller's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2013):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     December 18, 2013.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE